Pittsburgh Plate Glass Company, Appellee, v. Blue Island Trust & Savings Bank, Appellant.

Gen. No. 36,380.

Opinion filed October 10, 1933.

W. OTTO WIELGORECKI, for appellant; WALTER F. BRIODY, of counsel.

A. S. and E. W. FROEHLICH, for appellee.

MR. JUSTICE SCANLAN delivered the opinion of the court.

Plaintiff sued defendant in trespass on the case. The case was tried upon the first count of the declaration, to which defendant filed the plea of the general issue. In a trial by the court defendant was found guilty and plaintiff's damages were assessed at the sum of $1,000. Judgment was entered upon the finding and defendant has appealed.

The first count of the declaration alleges, in substance, that at the time of the death of one Alfred Brunner he was indebted to plaintiff in the sum of $1,000; that Brunner died January 28, 1929, leaving

property sufficient to pay his just debts; that on February 18, 1929, letters of administration were duly issued upon his estate to defendant and that the latter, during the period of probate of said estate, continued to act as administrator of the estate; that on August 31, 1929, ''plaintiff caused to be prepared, sworn to and executed, in due form of law, a claim in the sum of One Thousand Dollars against the estate of said Alfred Brunner, deceased, and did on to-wit: said last mentioned date present the same to the defendant; whereupon the defendant did then and there accept said claim so presented to it, and did state to the plaintiff that it had received claims from other creditors against said estate, and did then and there well and truly promise the plaintiff that it would cause the plaintiff's said claim, together with other claims in its hands against said estate, to be duly filed in court against said estate. By reason whereof, the plaintiff did take no other or further action to cause a claim to be filed against said estate within the year immediately following the date of the granting of said letters to the defendant, but did wholly rely upon the promises and assurances of the defendant above set forth. Nevertheless the defendant did, notwithstanding its said promises, carelessly and negligently fail and neglect to file said claim of the plaintiff in said Probate Court of Cook County against said estate within the period of one year from and after February 18, 1929. By reason whereof the plaintiff was not permitted by law to share in said estate of Alfred Brunner, deceased, as a creditor thereof, but did wholly lose its said rights as such creditor, and has thereby suffered damages in a large sum to-wit: the sum of One thousand dollars with interest thereon at the rate of five per cent per annum from and after February 18, 1930''; to the damage of plaintiff, etc.

It was conceded that the estate of Brunner was solvent and able to pay the claim of plaintiff, had it been filed in apt time, and it is further conceded that the claim was a meritorious one. As to the facts of the case it is sufficient, for the purposes of this appeal, to state that plaintiff introduced evidence tending to prove that it delivered to defendant, as administrator of the estate of Brunner, a formal claim against the estate; that at least one official of defendant bank examined the claim and informed the messenger that it was correct and that he might so report to plaintiff; that the messenger requested an official of the bank to file the claim against the estate in the probate court; that an official of the bank stated to the messenger that the claim was "all right" and then filed it in a cabinet in the bank "with other papers concerning the same estate"; that the messenger asked the bank official to see that the claim was properly filed in the probate court, to which the latter answered, "Yes," and that the messenger could report back to the plaintiff that "everything was O. K." It is also conceded that defendant did not file the claim in the probate court. Plaintiff also offered testimony to the effect that after the time for filing claims against the estate had expired, the attorney for plaintiff asked the cashier and trust officer of defendant company, who had had charge of the estate of Brunner, why plaintiff's claim had not been filed in the probate court, to which question the said officer answered: "I got the claim all right, but I didn't file it because there weren't any assets there anyhow."

At the close of plaintiff's evidence defendant moved for a finding in its favor on the ground "that the evidence did not make out a cause of action for the plaintiff." This motion was denied and defendant renewed the motion at the close of all the evidence and now contends that the court erred in denying it. Defend-

ant states: "There is an entire failure of proof on two of the elements which are vital to plaintiff's cause of action. One of these is a promise or undertaking on the part of defendant. The other is the presence of a consideration for such undertaking or promise. There is no evidence whatever on either of these items." While it is true that the defendant introduced evidence tending to prove that it did not promise or undertake to file the claim in question, nevertheless, the evidence introduced by plaintiff tended to prove that it did so promise and undertake. The vital question in the case, however, is involved in the contention of defendant that "a promise for which there is no consideration is gratuitous and does not create any legal responsibility," and that the instant case is governed by this familiar principle of law. Plaintiff concedes that defendant's contention states a correct general principle of law, but it argues that there are certain exceptions to the same and that the case falls within the exceptions, and it cites a number of cases in support of its position. The answer of defendant to this position of plaintiff is that the action is brought for the alleged nonfeasance of defendant and that an action will not lie against one who undertakes to do an act for another without reward, for mere nonfeasance. The allegations in the declaration relating to the alleged duty of defendant to file the claim are as follows:

"Whereupon the defendant did then and there accept said claim so presented to it, and did state to the plaintiff that it had received claims from other creditors against said estate, and did then and there well and truly promise the plaintiff that it would cause the plaintiff's said claim, together with other claims in its hands against said estate, to be duly filed in court against said estate. . . . Nevertheless the defendant did, notwithstanding its said promises, carelessly and

negligently fail and neglect to file said claim of the plaintiff in said Probate Court of Cook County against said estate within the period of one year from and after February 18, 1929.''

The gist of plaintiff's claim, under count one, is the promise of defendant to file and that it did ''negligently fail and neglect to file said claim.'' The doctrine of gratuitous agency seems to be well settled and the line of demarcation between liability and nonliability of gratuitous agents plainly drawn. In *Thorne v. Deas,* 4 Johns. (N. Y.) 84, plaintiffs owned a half interest in a vessel and the defendant owned the other half. The vessel was about to start on a voyage and one of the plaintiffs spoke to the defendant about the necessity of procuring insurance. The defendant voluntarily undertook to procure insurance for the vessel on the voyage but neglected to do so, and the vessel was lost. Plaintiffs brought an action on the case against the defendant for his negligence in not procuring the insurance. In his opinion Chief Justice Kent reviews all of the leading common law cases bearing upon the subject and states (pp. 96 & 97):

''The chief objection raised to the right of recovery in this case, is the want of a consideration for the promise. The offer, on the part of the defendant, to cause insurance to be effected, was perfectly voluntary. Will, then, an action lie, when one party intrusts the performance of a business to another, who undertakes to do it gratuitously, and wholly omits to do it? If the party who makes this engagement, enters upon the execution of the business, and does it amiss, through the want of due care, by which damage ensues to the other party, an action will lie for this *misfeasance.* But the defendant never entered upon the execution of his undertaking, and the action is brought for the *nonfeasance.* . . . A short review of the leading cases will show, that, by the common law, a *man-*

*datary,* or one who undertakes to do an act for another, without reward, is not answerable for omitting to do the act, and is only responsible when he attempts to do it, and does it amiss. In other words, he is responsible for a *misfeasance,* but not for a *nonfeasance,* even though special damages are averred.''
In *Marks v. Nambil Realty Co., Inc.,* 245 N. Y. 256, plaintiff was the tenant of the ground floor and cellar of a building, and a flight of stairs leading to the cellar fell out of repair. The defendant, the landlord, was notified of the defect and promised to correct it. In his opinion, Chief Justice Cardozo says (pp. 257–8):

''The promise was gratuitous, for the stairs were not for the common use of all the occupants of the building, but were wholly within the premises demised. . . . The landlord, however, did repair, and made a bungling job of it. .... The plaintiff expressed misgivings as to the safety of the prop, but was assured by the landlord's agent that it would 'last forever.' The event belied the prophecy. Step and prop collapsed under the burden of the plaintiff's weight. He was thrown to the ground, and suffered injuries for which he sues. The landlord, though a volunteer in making the repairs, is liable, none the less, for negligence in making them. 'It is ancient learning that one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all' (*Glanzer v. Shepard,* 233 N. Y. 236, 239). The distinction in such cases is the old one between nonfeasance and misfeasance (*Thorne v. Deas,* 4 Johns. 84, 96; *Siegel v. Spear & Co.,* 234 N. Y. 479, 483; Bohlen, Studies in the Law of Torts, p. 80). A landlord in these circumstances is not charged with liability on the basis of the non-performance of a voluntary promise. He is charged with liability because having chosen to perform he has thereby become subject to a duty in respect of the manner of performance.''

(See also *Harriman v. N. Y., C. & St. L. R. R. Co.,* 253 N. Y. 398; *Glanzer v. Shepard,* 233 N. Y. 236.) In 1 Mechem on Agency (2d ed.) 920, Sec. 1258, the author states:

"If in such a case the agent refuses to enter upon and perform the service at all; if his default consists in the mere not doing of a thing which he had promised to perform, and it be not a case where the *law* imposes upon him the duty to perform it, the fact that the performance was to be gratuitous, that the promise to perform was entirely without consideration, will furnish a complete defense to a claim for damages on account of such default. This is upon the familiar ground that the non-performance of a gratuitous executory contract constitutes no cause of action. But where, on the other hand, the agent has entered upon the performance of the service, although it be gratuitous, it then becomes his duty to conform to the instructions given. If he were not willing to do so, he should have declined to serve; but having entered upon the performance of the service, he must obey instructions, and a failure to do so, will subject him to liability for the loss or damage occasioned thereby."

In *Bellemire v. The Bank of the United States,* 4 Whart. (Pa.) 105, 113, the rule is thus stated:

"Though the gratuitous acceptance of an agency is a consideration for an implied undertaking against misfeasance, it requires a valuable consideration to support an action for nonfeasance."

In support of its position plaintiff cites 2 C. J. 717, sec. 372; *Barile v. Wright,* 256 N. Y. 1, 4; *Meyerson v. New Idea Hosiery Co.,* 217 Ala. 153, 157; *Isham v. Post,* 141 N. Y. 100, 104–5. The citation from Corpus Juris accords with the rule laid down by Mr. Justice Kent. In *Barile v. Wright* (opinion by Mr. Justice Cardozo) the defendant was bound because "he en-

tered upon the business of his agency, took out the promised policy and exacted money from his principal to make him whole for his expense. He could not do these things in performance of the mandate, and win exemption thereafter if performance was remiss or ineffective (*Isham v. Post,* 141 N. Y. 100, 105, 106; *Marks v. Nambil Realty Co.,* 245 N. Y. 256)."

In *Meyerson v. New Idea Hosiery Co.,* it appeared that the agent performed the agency negligently and as a proximate consequence of such negligence caused damage to his principal. In *Isham v. Post* (referred to by Mr. Justice Cardozo in *Barile v. Wright*) the plaintiff sued to recover damages for the negligent misfeasance of the agent. The plaintiff also cites *McNevins v. Lowe,* 40 Ill. 209, but this case merely holds that where one not professing to be a physician nor practicing as such is "asked his advice as a friend or neighbor, he does not incur any professional responsibility."

In the instant case there is no evidence tending to prove that defendant performed any act in furtherance of its promise to file. In fact, the declaration is based upon the theory that defendant promised to file and failed to file, and the demurrer to it should have been sustained. After giving full consideration to the material question involved in the present appeal, we have reached the conclusion that neither the first count of the declaration, upon which the case was tried, nor the evidence makes out a prima facie case for plaintiff and therefore the court erred in denying the motion of defendant for a finding in its favor at the close of all the evidence.

Defendant has strenuously argued the further contention that it is the duty of a creditor of an estate to present his claim to the probate court if he wishes to participate in the assets of the estate; that he is presumed to know the law in this respect and cannot im-

pose the duty of filing upon the administrator by delivering a claim to him; that it is the duty of an administrator to defend against claims and that it would be contrary to the best interests of an estate and against the policy of the law to permit administrators to present claims against estates. While there is much force in this contention we do not deem it necessary to pass upon the same.

The judgment of the superior court of Cook county will be reversed.

*Reversed.*

SULLIVAN, P. J., and GRIDLEY, J., concur.