McNally, J. (concurring).
I concur in the opinion of Van Voobhis, J., for the reasons stated therein and on an additional ground. The assumption by the respondent of the partial protection of plaintiff’s intestate under the circum *87 stances of this case carried with it the obligation not to terminate such protection if in the exercise of reasonable care it was apparent that its acceptance of the information furnished and services rendered by plaintiff’s intestate and its public acknowledgment of his role, confirmed by the assumption of his partial protection by the respondent, either enlarged or prolonged the risk of bodily harm to the plaintiff’s intestate. It is now clear that sovereign immunity is unavailable to the respondent in respect of active negligence even in regard to or in the discharge of a governmental function. It is equally clear that it is immaterial that the respondent’s duty in regard to preserving public peace is a governmental function when in the negligent discharge of that duty personal injuries result. (Bernardine v. City of New York, 294 N. Y. 361; Murrain v. Wilson Line, 270 App. Div. 372, affd. 296 N. Y. 845). The voluntary assumption of plaintiff’s intestate’s partial protection carried with it the obligation to exercise reasonable prudence in regard to the foreseeable risks engendered thereby. “It is ancient learning that one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all”. (Glanzer v. Shepard, 233 N. Y. 236, 239; Marks v. Nambil Realty Co., 245 N. Y. 256, 258.)
At this time every favorable inference is required to be indulged to sustain the complaint. As presently drawn it enables proof that Willie Sutton was a notorious and dangerous criminal at large associated with persons having a reputation for violence and likely to seek revenge against any person instrumental in his identification and apprehension; that plaintiff’s intestate, a law abiding citizen with no reason to anticipate harm from any source, conveyed information to the respondent resulting in the apprehension of Willie Sutton; that the role of plaintiff’s intestate was publicized with the knowledge and co-operation of the respondent and publicly confirmed by the respondent’s assumption of partial protection of plaintiff’s intestate. There was thus set in motion a series of events which it may be reasonably found had implications of danger to the person of plaintiff’s intestate which were reasonably foreseeable and contributed to in some measure by respondent’s conduct. (O’Neill v. City of Port Jervis, 253 N. Y. 423, *88 433.) Moreover, the seemingly difficult and dangerous position in which plaintiff’s intestate was placed was unnecessarily enhanced by representations on the part of various members of the Police Department that he was not endangered. These representations are akin to that made by the surgeon to the father of the infant plaintiff in Meiselman v. Crown Heights Hosp. (285 N. Y. 389) where the surgeon said “ that the boy did not need further hospitalization” and where this court held (p. 395): “At least, the jury might have found that the defendants had prematurely and willfully discharged themselves from attention to the case while the patient was desperately ill and before he was cured without giving information or advice as to subsequent treatment or the desperate and dangerous condition and character of the disease ”. Here a jury might find that the defendant prematurely withdrew partial protection of plaintiff’s intestate while he was in a state of danger brought about in some measure by respondent’s acts. (See, also, Carpenter v. Blake, 75 N. Y. 12, 22, 23.) Whether the exposure of plaintiff’s intestate was enhanced by the respondent and whether it subsisted at the time the partial protection was suspended by the respondent present factual issues. “ The query always is whether the putative wrongdoer has advanced to such a point as to have launched a force or instrument of harm, or has stopped where inaction is at most a refusal to become an instrument for good”. (Moch Co. v. Rensselaer Water Co., 247 N. Y. 160, 168.)
It is to be noted that the plaintiff was shot and killed by an unknown person or persons on March 8, 1952, a period of 19 days after his identification of Willie Sutton, and it cannot be said at this time that the death of plaintiff’s intestate is too remote in respect of the time that he informed the respondent. The death of plaintiff’s intestate may have been caused by circumstances unrelated to respondent’s conduct with regard to plaintiff’s intestate. At this time we need only decide that the evidence admissible under the allegations of this complaint may support a finding with reasonable certainty that the death and injuries of plaintiff’s intestate were proximately caused by respondent’s conduct; the fact that other proximate causes may be established does not preclude plaintiff’s reliance on those attributable to the respondent. (Dunham v. Village of *89 Canisteo, 303 N. Y. 498; Ingersoll v. Liberty Bank of Buffalo, 278 N. Y. 1, 7; Stubbs v. City of Rochester, 226 N. Y. 516, 526.) The presence of several bases of proximate cause merely serves to emphasize that a factual question is present. (Carlock v. Westchester Light. Co., 268 N. Y. 345, 349.)
The judgment appealed from should be reversed and defendant’s motion to dismiss the complaint should be denied, with costs in all courts.